**FILED**
**MARCH 17, 2022**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 37493-9-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| HEATH C. VANDINE, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Heath Vandine appeals his convictions for rape of a child in the first and second degree, along with statutory aggravators. We affirm.

FACTS

Mr. Vandine is the father of A.D.V.,[1] who was born in 2003. In 2017, A.D.V. reported ongoing sexual abuse by Mr. Vandine. The first assault took place when A.D.V.

---

[1] To protect the privacy interests of the child victim, we use their initials throughout this opinion. Gen. Order 2012-1 of Division III, *In re the Use of Initials or Pseudonyms for Child Victims or Child Witnesses*, (Wash. Ct. App. June 18, 2012), https://www.courts.wa.gov/appellate_trial_courts/?fa=atc.genorders_orddisp&ordnumber =2012_001&div=III.

was six years old. The majority of the abuse occurred several years later, after A.D.V. reached adolescence.

Mr. Vandine has degenerative disk disease and would frequently ask A.D.V. to massage his back. Mr. Vandine's massage requests occurred several times a week and would often lead to abusive sexual contact. On one occasion, A.D.V. reported a different type of assault; she claimed Mr. Vandine picked her up, turned her upside down, and assaulted her while she was upside down.

A.D.V. did not disclose Mr. Vandine's abuse until she reached high school. At that point, one of her confidants was her aunt. After learning of A.D.V.'s allegations, the aunt took A.D.V. into her home and to the police. As part of the law enforcement response, the aunt was instructed by Child Protective Services to help A.D.V. to complete a rape kit. The aunt was not told where to go to have a rape kit performed. She took A.D.V. to her family clinic.

A.D.V. had a walk-in appointment with a physician assistant (PA) at her aunt's clinic. The PA was not trained to administer a rape kit and did not do so. Instead, the PA performed a physical examination, checking for injuries, pregnancy and sexually transmitted diseases. The examination did not uncover any positive test results or physical signs of abuse.

2

No. 37493-9-III
*State v. Vandine*

The State charged Mr. Vandine with several counts of child rape. The case proceeded to a jury trial held in November 2019. The State moved for admission of A.D.V.'s statements to the PA under ER 803(a)(4) (medical treatment or diagnosis). Mr. Vandine objected and the court overruled, explaining the purpose of the examination was for A.D.V.'s health and safety.

As part of the voir dire, prospective jurors completed written questionnaires. One area of inquiry apparently pertained to sexual assault and domestic violence.[2] Jurors who reported past experiences with sexual assault or domestic violence were brought in for individual questioning by the court and parties.

Jurors 13 and 14 were among those brought in for individual questioning. Both prospective jurors reported having family members who were victims of sexual assault. Both repeatedly stated they could be fair and impartial, despite their past experiences. Although he did not utilize all of his peremptory strikes, Mr. Vandine's attorney did not challenge juror 13 or 14. Jurors 13 and 14 sat on the final jury panel.

The jury heard from several witnesses at trial, including A.D.V., the PA, and Mr. Vandine. Some of the testimony touched on Mr. Vandine's back problems. The

[2] The questionnaire is not part of the record on review. We discern the nature of the questionnaire from context.

3

defense did not call any medical or expert witnesses to discuss Mr. Vandine's back issues. During a pretrial hearing, defense counsel explained he was unable to obtain Mr. Vandine's medical records. As part of closing argument, Mr. Vandine argued that his back condition prevented him from being capable of picking up A.D.V. and flipping her upside down as she alleged.[3]

The jury found Mr. Vandine guilty as charged. The trial court imposed an indeterminate sentence of 280 months to life imprisonment. Mr. Vandine timely appeals.

## ANALYSIS

*Assistance of counsel (investigation and presentation of a defense)*

Mr. Vandine argues his trial attorney's performance was deficient because he failed to investigate and present a defense regarding Mr. Vandine's physical capacity to perform the sexually abusive acts alleged by A.D.V. To establish a claim of ineffective assistance of counsel, the defendant must show both (1) deficient performance and (2) prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Failure to establish either prong precludes relief from conviction. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

---

[3] A.D.V.'s allegation that Mr. Vandine picked her up and had her upside down formed the basis of count 4 of the information, second degree rape of a child.

4

Mr. Vandine's ineffective assistance claim fails because he cannot establish prejudice. In this context, prejudice requires showing that but for defense counsel's deficient performance, there was "a reasonable probability that the outcome would have been different." *State v. Cienfuegos*, 144 Wn.2d 222, 227, 25 P.3d 1011 (2001). This probability is "more than a 'conceivable effect on the outcome.'" *State v. Estes*, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017) (internal quotation marks omitted) (quoting *State v. Crawford*, 159 Wn.2d 86, 99, 147 P.3d 1288 (2006)).

The record here fails to show that testimony from a medical expert would have altered the outcome of Mr. Vandine's case. The trial evidence indicated Mr. Vandine was capable of a variety of physical activities, including sports and manual labor, despite his back problems. It is far from obvious that an expert would have supported Mr. Vandine's claim that he was incapable of performing the acts described by A.D.V. Given this circumstance, relief on appeal is inappropriate. Our disposition does not preclude Mr. Vandine from seeking relief through a personal restraint petition with an expanded factual record. *See State v. Norman*, 61 Wn. App. 16, 27-28, 808 P.2d 1159 (1991).

*Assistance of counsel (excusal or peremptory strikes during jury selection)*

In addition to his arguments regarding lack of investigation, Mr. Vandine claims

his attorney performed deficiently by failing to request jurors 13 and 14 be removed from

the venire. Here, Mr. Vandine cannot show deficient performance.

Juror selection is generally understood as a matter of trial tactics. As such, counsel

receives considerable latitude in deciding whether to challenge a particular juror. *See*

*State v. Lawler*, 194 Wn. App. 275, 285, 374 P.3d 278 (2016). Even in instances where a

juror indicates a lack of objectivity, an appellant may not be able to show counsel's

failure to challenge the juror was not due to tactical reasons. *See id.*

The record on review shows defense counsel had ample reason to decline for-

cause challenges against jurors 13 and 14. While jurors 13 and 14 both had past

experiences related to sexual assault, this is sadly not an uncommon circumstance. Both

jurors 13 and 14 stated clearly that, despite their past experiences, they would be able to

fairly adjudicate Mr. Vandine's case. Mr. Vandine's attorney likely surmised that an

attempt to challenge jurors 13 and 14 would be unsuccessful. It is not deficient

performance for an attorney to decline to move for relief when there would be little

chance of success on the merits. *State v. Brown*, 159 Wn. App. 366, 371, 245 P.3d 776

(2011) (Defense counsel has "no duty to pursue strategies that reasonably appear unlikely to succeed.").

We also cannot say that the decision not to exercise peremptory challenges against jurors 13 and 14 was not strategic. There might have been aspects of jurors 13 and 14 that defense counsel felt were favorable. In addition, had jurors 13 and 14 been struck, then two jurors further down the venire panel would have been added to the petit jury. Defense counsel might have concluded jurors 13 and 14 were preferable to the jurors that would have been included had jurors 13 and 14 been struck. We will not second guess this strategic decision on appeal. *See Lawler*, 194 Wn. App. at 290.

*Admission of statements under ER 803(a)(4)*

Mr. Vandine contends the trial court erroneously admitted A.D.V.'s statements to the PA under ER 803(a)(4). Our review is for abuse of discretion. *State v. Young*, 160 Wn.2d 799, 806, 161 P.3d 967 (2007). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

Hearsay is any out-of-court statement offered to prove the truth of the matter asserted. ER 801(c). Generally, hearsay is not admissible. ER 802. However, an exception

exists for statements made for purposes of medical diagnosis or treatment. The applicable

rule provides:

> Statements made for purposes of medical diagnosis or treatment and
> describing medical history, or past or present symptoms, pain, or sensations,
> or the inception or general character of the cause or external source thereof
> insofar as reasonably pertinent to diagnosis or treatment.

ER 803(a)(4).

For a statement to be "reasonably pertinent" to medical diagnosis or treatment

under ER 803(a)(4), the declarant's motive in making the statement must be to promote

treatment and the medical professional must have relied on it for the purposes of

treatment. *State v. Doerflinger*, 170 Wn. App. 650, 664, 285 P.3d 217 (2012).[4] In most

instances, statements about the cause of a patient's injuries are not pertinent to treatment

or diagnosis. *State v. Butler*, 53 Wn. App. 214, 220, 766 P.2d 505 (1989). But when

the injuries are attributed to child abuse, an exception applies. In such circumstances,

adequate treatment and injury prevention requires not only identifying the nature of the

child's injuries, but also the source of the injury and risk of further abuse. *Id*. at 220-21.

---

[4] The evidentiary test is distinct from the confrontation clause test, which looks to the primary purpose of the interrogation. *Michigan v. Bryant*, 562 U.S. 344, 360, 131 S. Ct. 1143, 179 L. Ed. 2d 93 (2011). Mr. Vandine does not allege a confrontation clause violation. Given A.D.V. testified at trial, Mr. Vandine would not be able to make a prima facie case of a confrontation clause violation. *See Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

The record here shows the motive behind A.D.V.'s consultation with the PA was to receive medical treatment. The PA was not trained in forensic investigation and did not purport to administer a rape kit. The only examination the PA was equipped to perform was a normal gynecological exam. As part of the exam, it was appropriate for the PA to ask A.D.V. questions about her ongoing safety, as well as the possibility of pregnancy or sexually transmitted diseases. Given these circumstances, the examination properly included questions regarding A.D.V.'s allegations of assault. The testimony was correctly admitted under ER 803(a)(4). *See State v. Scanlan*, 193 Wn.2d 753, 768, 445 P.3d 960 (2019).

## CONCLUSION

The judgment of conviction is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____
Fearing, J.

_____
Staab, J.

9